**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DEBRA HALL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 22-4643** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | **SECTION: "G" (4)** |

**REPORT AND RECOMMENDATION**

This is an action for judicial review of a final decision of the Commissioner of Social Security, pursuant to Title 42 United States Code § 405(g). The Commissioner denied Plaintiff, Debra Hall ("Hall") eligibility for Disability Insurance Benefits ("DIB") under the Title II of the Social Security Act, 42 U.S.C. § 423.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b), for the submission of Proposed Findings and Recommendations.

## I. Background

Hall is a twenty-seven-year old, 160 pound, 5' 4" female, high school graduate, who has past relevant work as a controller. Rec. doc. 9, Tr. 424. Hall alleges that she became disabled on November 10, 2020, due to arthritis of bilateral knees status post double knee replacement, chronic migraines, neck pain, sciatica, foot pain and hyperalgesia. Rec. Doc. 9. Hall filed for DIB under Title II of the Social Security Act, on March 3, 2021. *Id*. at Tr. 54.

She alleges that she was involved in a car accident, and has not engaged in any substantial gainful activity or employment since November 21, 2018. *Id*. On May 15, 2019, after being denied DIB by the state agency, Hall timely filed a Request for Reconsideration on December 5, 2019, which was denied. *Id*. at Tr. 242-244.

Thereafter, Hall filed a request for hearing by an ALJ on December 17, 2019, and October 21, 2020. *Id*. at Tr. 292-294. A hearing took place on March 9, 2021, and July 12, 2021. *Id*. The ALJ denied Hall's claim on July 22, 2021, finding that she was not disabled under the meaning of the Social Security Act, from November 21, 2018, through the date of his decision. *Id*. at Tr. 10-22.

In his decision, the ALJ analyzed Hall's claims pursuant to the five-step[1] evaluation process used to determine whether a claimant is "disabled." Using this process, the ALJ found that Hall met the insured status requirements of the Act through December 31, 2023. Tr. 12.

He determined that Hall meets the insured status requirements through December 13, 2024, and that Hall has not engaged in substantial gainful activity since November 10, 2020, even though she did some limited work. Finding 1, Tr. 15. He further found that Hall had severe impairments consisting of a multi-level generative disc disease, stenosis and scoliosis, migraine, and status post bilateral knee arthroplasties. The ALJ further noted that the medically determinable impairments significantly limited her ability to perform basic work activities as required by SSR 85-28. Finding 3, Tr. 15.

He also found that while Hall has medically determinable impairments, that they were not

---

[1]To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. *Carey v. Apfel*, 230 F.3d 131, 134-35 (5th Cir. 2000) (citing *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)).

First, the claimant must not be presently working at any substantial gainful activity. *Id*. Second, the claimant must have an impairment or combination of impairments that are severe. *Id*. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id., citing Crowley, 197 F.3d 194, 197-98. Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Id. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.*; *see Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

severe because they do not cause a significant limitation in her ability to perform basic work activity, and nor did the impairments last for a continuous period of 12 months. *Id*. The ALJ noted that while Hall has received treatment for hyperlipidemia, the limitation was not more significant than her work-related function and was secondary to the medically determinable impairment. *Id*. The ALJ further found that Hall's medically determinable mental impairment of anxiety does not cause more than minimal limitation in her ability to perform basic mental work activities and therefore is not severe.

The ALJ further found that Hall does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments. Having determined Hall's medically determinable impairments, the ALJ found that she did not have an impairment or combination of impairment or impairments that meet or medically equals the severity of one of the listed impairments under Section 1.15, 1.16, 1.17, and 1.18. *Id*. at 18.

The ALJ held that after careful consideration, Hall has the residual functional capacity to perform sedentary work subject to the following limitations: Hall could never climb ladders, ropes or scaffolds, and she could climb ramps and stairs occasionally. *Id*. He further found that she could occasionally stoop and balance when walking on narrow, slippery and uneven surfaces. *Id*. Further, the ALJ found that Hall could never kneel, crouch or crawl. *Id*.

The ALJ held that Hall is capable of performing past relevant work as a controller and bookkeeper, because these jobs do not require the performance of work-related activities precluded by Hall's residual functional capacity. Finding 6, P. 22. Finally, the ALJ found that Hall has not been under a disability from November 10, 2020 through the date of this decision. Finding 7, Tr. 22.

The Appeals Council denied Hall's Request for Review on March 11, 2022. Thereafter, Hall filed the instant action in federal court, on November 23, 2022,[2] seeking review of the ALJ's decision on the grounds that the (1) the ALJ's finding failed to account for any functional limitations related to Ms. Hall's Migraines, which the ALJ concluded were a severe Medically determinable impairment, (2) whether remand is required because the ALJ failed to include the mental limitations he found credible in the RFC finding, and (3) whether remand is required because the ALJ failed to articulate the supportability and consistency factors regarding the medical opinion evidence.

## II. <u>Standard of Review</u>

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a

[2] *See* Rec. Doc. No. 1.

conclusion. *Ripley v. Chater,* 67 F.3d, 552, 555 (5th Cir. 1995); citing *Richardson v Perales*, 402 U.S. 389, 401 (1971). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 12-2681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013); citing *Kent v. Schweiker,* 710 F.2d 110, 114 (3rd Cir. 1983).

## III. Analysis

### A. Effect of ALJ's failure to Attribute Specific Limitation to Hall's Severe Migraine

Hall contends that the ALJ failed to account for any functional limitations related to her migraines even though they were deemed a severe medically determinable impairment. Rec. Doc. 10. Hall contends that the ALJ's RFC finding constituted legal error requiring remand. *Id*. Hall further contends that as a matter of law, her migraines significantly limited her ability to perform basic work activities and that the ALJ put too much emphasis on her statement that her migraines were better since she has gone through menopause. *Id*. at 4.

Hall also contends that her neurologist statement that her headaches were not singularly disabling should be considered along with her other alleged and conclusively severe impairments. *Id*. at 6. Additionally, Hall contends that without providing any limitations related to migraines in the dispositive hypothetical question, it is unclear if the relevant limitation would preclude her

from her past work or other jobs. As a result, Hall contends that remand is required.

The Commissioner contends the ALJ correctly considered all of the evidence, including the medical opinion evidence from the State agency medical consultants ("SAMCs") who found severe migraines, but assessed a less restrictive RFC than the ALJ. The ALJ also contends that the RFC assessment is supported by their expert medical findings, and the ALJ properly considered all the evidence including the medical opinion of the State agency psychological consultant. Rec. Doc. 11. The Commissioner contends that the ALJ properly explained why he found the medical source statement unpersuasive, addressing the factors of consistency and supportability, and citing specific evidence. As a result, the Commissioner contends that since the two most important factors of supportability and consistency were discussed, the Court should affirm his decision. Finally, the Commissioner contends that the ALJ need not assess a limitation for every impairment meeting the minimal threshold definition of a severe impairment.

Regarding Hall's migraines, the ALJ noted that Hall alleged ongoing problems with her knees, but stated that her migraines were improving with menopause. Rec. Doc. 9, Tr. 19. He noted that Hall identified migraine triggers as neck pain, stress and looking at numbers all day. She reported working from home full-time since 2016-2017. *Id*. at Tr. 19. The ALJ noted that before the onset of her disability, that she had a history of migraines along with other ailments. *Id*. He also noted that despite these medical conditions, she was independent in her functioning. *Id*.

In assessing Hall's statement as to the intensity, persistence and limiting effects of her migraines, the ALJ noted her complaints of 7-10 headaches a month (2-3 severe ones) with a duration of 72 hours. *Id*. at 20. He also noted her complaint of light sensitivity and her statements of improvement in her migraines on several occasions. *Id*. The ALJ further noted that Hall has

acknowledged going 30 days without a headache while on AJOVY, and less head pain since beginning menopause. *Id*. He further noted that according to Hall she did not take much time off from work, and that she on occasion would complete her work from the couch. *Id*.

The ALJ further noted the medical source statement indicating that Hall was diagnosed with chronic migraines. *Id*. Dr. White described trouble with computer screens due to triggering migraines and exacerbating neck pain. *Id*. However, the ALJ was not persuaded by these findings because they were offered on a checklist form provided by Hall's representative which the ALJ determined is inconsistent with the evidence of record. *Id*.

It is the ALJ's responsibility to weigh the evidence, resolve material conflicts in the evidence, and decide the case. *See Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) ("It is, of course, for the Secretary to decide what weight to accord various medical reports."). The ALJ's RFC finding is "granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the [ALJ's] decision or finds that the [ALJ] made an error of law." *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). A reviewing court may not reweigh the evidence or substitute its judgment for the ALJ's judgment even if the evidence weighs against the ALJ's determination. *Carey v. Apfel*, 230 F.3d at 131, (5th Cir. 2000). "In practice, this means that a reviewing court must affirm the Commissioner, even when the court disagrees with the Commissioner's decision, so long as it is supported by some evidence that any reasonable fact finder might accept." *Washington v. Barnhart*, 413 F. Supp. 2d 784, 791 (E.D. Tex. 2006).

As recently emphasized by the Fifth Circuit, the specific meaning of "severe impairment" may be "somewhat surprising" under its binding precedent. *Salmond v. Berryhill*, 892 F.3d 812,

817 (5th Cir. 2018). As has been the case since the Fifth Circuit decided it's often-cited decision in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), "[a]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id*. at 1101. "Re-stated, an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond*, 2018 WL 3015052, at *3 (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). Under Fifth Circuit precedent, a claimant need only "make a de minimis showing" to proceed past Step 2 of the evaluative sequence. *Id*. (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992)).

While finding that a claimant has a severe impairment is insufficient of itself to qualify for disability benefits, it is required to proceed past the second step mandated by the social security regulations. *Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987) (per curiam). A severity finding at Step 2 does not foreclose an RFC assessment that a claimant retains the capacity to perform a range of work and a severity finding is "not necessarily inconsistent with [such an RFC] finding." *Boyd v. Apfel,* 239 F.3d 698, 706 (5th Cir. 2001). In short, "the consideration of whether a claimant's impairments are severe at step two is a different inquiry than an ALJ's assessment of the claimant's RFC." *Winston v. Berryhill*, No. 3:16-CV-419-BH, 2017 WL 1196861, at *13 (N.D. Tex. Mar. 31, 2017), appeal filed, No. 17-11173 (5th Cir. Oct. 4, 2017).

The applicable regulation explains that RFC sets out the most that a person can do despite limitations resulting from impairments. 20 C.F.R. § 404.1545(a)(1). "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in

a work setting on a regular and continuing basis." Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at * 1 (S.S.A. July 2, 1996). To constitute "a regular and continuing basis," requires working "8 hours a day, for 5 days a week, or an equivalent work schedule." *See id*. An RFC assessment should consider "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id*. When assessing an individual's RFC, administrative adjudicators consider "all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources." *Id*. at *2.

A review of the record shows that one reason for the ALJ's opinion regarding Hall's migraines is her pre-disability onset statement that her migraines decreased after menopause. *See* Rec. Doc. 9, Tr. 19. He pointed out what her reported triggers were and that that she reported going 30 days without a headache while on AJOVY. *Id*. He also discounted the undated medical source statement faxed to DDS in December 2020 because it contained check boxes. Rec. Doc. 9. He noted that in November 2020 she reported 7-10 headaches per month, and severe headaches 2-3 a month. Rec. Doc. 9, Tr. 466. He further noted that the medical records approximately a year later while she had migraines, were not the type that were intractable, suggesting there was improvement in the frequency and severity of her migraines. *Id*. at Tr. 21.

While there is no mention of her medical encounter of August 4, 2021, where she reported that AJOVY no longer seemed to be working ,and she had headaches for 20 days straight the

previous month, the doctor recommended UBRELVY and seemingly the severity of her headaches declined by December 2021 as they were noted as "not intractable". The ALJ further noted the modification by resting for 30 minutes while working. He noted that she reported performing household chores, driving, and maintaining her own hygiene.

The ALJ expressly considered Hall's migraine impairment, but he also determined that it does not impose any greater physical or mental limitation than her other impairments, as he found her statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible or inconsistent. This explains how a claimant's migraine impairment may "qualify an impairment as severe at Step 2 without imposing additional limitations during the RFC assessment." *See Sarah B. v. Berryhill,* No. 1:17-cv-0080-BL, 2018 WL 3763837 at *8 ( N.D. Tex. June 29, 2018), *rec. adopted,* No. 1:17-cv-080-C-BL, 2018 WL 3756944 ( N.D. Tex. Aug. 8, 2018).

The ALJ considered Hall's limitations that were encompassed by the severe impairments or accounted for the limitations in some respect before making a disability. *See Campbell v. Berryhill,* No. 3:15-cv-3913-N-BH, 2017 WL 1102797*, at* * 11 (N.D. Tex. Feb. 24,2017), *rec. adopted*, No.3:15-cv-3919-N-BH, 2017 WL 1091651 (N. D. Tex. Mar.23, 2017). Further when, as in this case, an impairment can reasonably be remedied or controlled by medication or treatment, it is not disabling and does not affect the claimant's RFC. *See Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988). *See*, e.g., *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004); *Yates v. Comm'r of Soc. Sec*., 706 F. App'x 588 (11th Cir. 2017) (ALJ who found severe impairments including headache did not err in failing to include migraine headache in the hypothetical question where ALJ correctly found the medical evidence did not support the

assertions of completely disabling pain relating to migraines).

There is no reversible error when an ALJ fails to set forth any specific limitation in his RFC assessment relating solely to a Step 2 severe impairment when other limitations account for the severe migraine impairment and no medical evidence indicated that the migraine impairment limits the claimant's ability to sustain any and all gainful employment. *See Gonzalez v. Colvin* No. 4:12-cv-641-A, 2014 WL 61171, at *6-7 & n.9 ( N.D. Tex Jan. 6, 2014).

**B. Effect of ALJ's Failure to Include the Mental Limitations in the RFC Finding**

Hall contends that the ALJ failed to articulate the logical and evidentiary basis for his dispositive findings. Rec. Doc. 10. Hall contends that while the ALJ found that she had a mild mental limitation in 4 distinct areas of mental functioning, he failed to provide an explanation as to why these proven limitations did not need to be accommodated in the RFC. *Id*. Therefore, Hall contends that remand is required because of the ALJ's failure to include or explain the omission of limitations he found credible from his RFC.

The Commissioner contends that the ALJ properly assessed Hall's mental impairment and found no severe impairment. Rec. Doc. 11. The Commissioner points out that the ALJ summarized the evidence citing Hall's complaints of problems with memory, concentration, and anxiety centered around a lack of employment and physical conditions. *Id*. The Commissioner contends that the ALJ need not assign a limitation for related to a non-severe impairment. *Id*.

"The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effects of all of these impairments." *Fraga v. Bowen,* 810 F.2d 1296, 1305 (5th Cir. 1987) (citation and quotation marks omitted). Thus, even where—as is the case here—an ALJ finds that a

claimant's medically determinable mental impairment isn't severe, the ALJ must still consider its impact when assessing the claimant's residual functional capacity. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' ... when we assess your residual functional capacity."). "This is because even non-severe limitations may combine with other severe impairments to prevent an individual from doing past relevant work or narrow the range of work that the individual can perform." *Id*. (quotations omitted); *see also* SSR 96-8P, 1996 WL 374184. Accordingly, under certain circumstances, "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-8P.

The ALJ in this case noted that the mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. Rec. Doc 9, Tr. 17. He then proceeded to conduct a residual functional capacity assessment considering both the physical and mental limitations and the degree of limitation as found in " paragraph B" . *Id*. The ALJ noted that State Agency consultant Lawrence Guidry, PhD opined that Hall had mild limitations in the "B" criteria. Rec. Doc. 9, Tr. 62. This opinion according to the ALJ is well supported by a summary of the evidence such as Hall's reports of anxiety regarding life's stressors. *Id*.

The ALJ considered the relevant evidence which included: (1) Dr. Guidry's report and findings, (2) Hall's reports of anxiety caused by life stressors, (3) the activities of daily living that she was able to engage in despite her anxiety, and (4) her normal mental status examinations

throughout the record. *Britton v. Saul,* 827 Fed. Appx. 426 (5th Cir. 2020). An RFC assessment does not need to contain in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild. *See*, *e.g.*, *Holley v. Comm'r Soc. Sec*., 590 F. App'x 167, 169 (3d Cir. 2014) (holding that when ALJ found that claimant "had—at most—minor mental impairments," ALJ did not err when RFC included no mental limitations). Considering the record as a whole, there is no reversible error as suggested by Hall.

Hall also suggests that the failure to include her mental limitations in the Vocational Hypothetical in determining whether it would impact her ability to perform work was done in error. Contrary to Hall's suggestion, the ALJ did explain how her mental functioning affected her functional capacity. According to his summary there was no effect as she was able to perform all activities of daily living unassisted, and also had normal mental status exams, and normal speech. *See Jeansonne v. Saul,* 855 Fed. Appx.193 (5th Cir. 2021). Where, as here, a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE. *Id*.; *see also D.C. v. Commissioner of Social Security*, 2021 WL 1851830 (D. New Jersey May 10, 2021).

**C. <u>ALJ's Articulation of Factors Regarding Other Medical Evidence</u>**

Hall contends that the ALJ failed to fully assess the supportability and consistency of the medical opinion from Hall's treating physician, Dr. White. Rec. Doc. 10. Hall contends that the ALJ rejected every aspect of Dr. White's medical opinion on legally insufficient basis. *Id*. Hall contends that the ALJ failed to state why Dr. White's own medical records might not be supportive of her opinion he did not explain why her medical opinion ran afoul of the other medical providers'

records. *Id*. Hall further contends that the ALJ failed to adequately explain why Dr. White's treatment notes were insufficient to support her medical opinion especially considering her need for pain intervention. *Id*. at 14. Finally, Hall contends that Dr. White's opinion was not limited to the information in the checked-off form even though it was expressed on the form. *Id*.

The Commissioner contends that the ALJ properly applied a revised set of regulations for evaluating medical evidence that differs substantially from prior regulations. Rec. Doc. 11. The Commissioner contends that the ALJ's persuasiveness analysis fully comports with the relevant guidelines which is not confined to the specific discussion of the opinion itself but in light of the entire RFC discussion and the evidence discussed therein.

Pursuant to the revised rules for evaluating medical opinions, the ALJ is no longer required to defer or give any specific evidentiary weight to any medical opinion or prior administrative finding. 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to consider all medical opinions and prior administrative medical findings using specific factors: (1) supportability; (2) consistency; (3) the physician's relationships with the claimant, which includes considering the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) the physician's specialization, and (5) other factors. 20 C.F.R. § 404.1520c(b). 13 The most important factors are consistency and supportability. *Id.*; *Garcia v. Berryhill,* No. 17-CV-263, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018). Under the revised guidelines, the ALJ must articulate how persuasive he finds each of the opinions in the record based on the supportability and consistency factors. 20 C.F.R. § 404.1520c(b).

The supportability factor evaluates how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

opinion(s).” 20 C.F.R. § 416.920c(c)(1). In other words, “supportability looks internally to the bases presented by the medical opinion itself.” *Sharon H. v. Kijakazi*, No. 5:21-CV-167-H, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022). “In articulating how they considered the supportability factor, ALJs may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, did not examine the claimant, or did or did not provide a detailed explanation for [their] opinion.” *Starman v. Kijakazi,* No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (citations omitted) (collecting sources).

Although the ALJ did not use the buzz words of supportability and consistency, a review of the ALJ’s opinion clearly supports that both supportability and consistency were considered. The record shows that the ALJ pointed out that he was “offered on a checklist form provided by the claimant’s representative” *See id.* at Tr. 21.; *see also* 20 C.F.R. § 404.1520c(c)(3)(iii) (ALJ may consider purpose of treatment relationship). He also noted that the MSS findings were “inconsistent with the evidence of record, including Dr. White’s own contemporaneous treatment notes”, addressing the supportability prong. *Id.* at Tr. 21, citing 747-70, 994-1009. Thus, the ALJ considered the doctor’s treating relationship with Plaintiff. 20 C.F.R. § 404.1520c(c)(3). Clearly, the doctor’s own contemporaneous findings on examination did not support her dire MSS findings. Therefore, the ALJ properly determined that her MSS was unpersuasive. *Id.* at Tr. 21.

Hall contends that the ALJ did not address any other medical opinion or record in weighing the MSS. R. Doc. 10, Tr. 13. However, the record shows that the ALJ noted that the SAMCs assessed a limited light RFC. *Id.* at Tr. 21. While this medical information was considered, the ALJ found that Hall had a more restrictive limited sedentary RFC. Their less restrictive RFC

assessments fully support the ALJ's persuasiveness analysis as they completely contradict Dr. White's MSS suggesting a total inability to work. *Id*. at Tr. 18-21, citing 5759, 64-67, 457-59. Therefore, the Court finds that the ALJ properly considered contradictory expert medical opinion evidence in finding Dr. White's MSS was unpersuasive. 20 C.F.R. § 404.1520c(c)(2).

Finally, the ALJ considered the supportability component. For example, the ALJ noted that Dr. White's own contemporaneous notes did "not reflect such extreme limitations" in her MSS Id at Tr. 21. He cited Dr. White's observation that Plaintiff was "negative for decreased concentration," which refuted her MSS opinion of an inability "to maintain attention and concentration". Rec. Doc. 9. at Tr. 21 (citing 1003). The ALJ compared Dr. White's finding on exam that Hall was not at risk of falling with her dire MSS finding (walk ½ a block without rest, stand 15 mins at one time and less than 2 hours total in a day). *Id*. at Tr. 21 (citing 1002). The MSS shows disabling migraines, while the ALJ pointed out that Dr. White's notes showed her migraines were not intractable *Id*. at Tr. 21 (citing 1007). He observed that the MSS showing needed to elevate her legs to 90 degrees and was not reflected in Dr. White's treatment notes. *Id*. at Tr. 21. Additionally, Dr. White's own contemporaneous notes indicate that that Hall was negative for headaches. Rec. Doc. 9, Tr. 749,755,752, 758.

## IV. Recommendation

Accordingly,

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge be **AFFIRMED** as it is based on substantial evidence, pursuant to Title 42 U.S.C. § 405(g); and that the plaintiff, Debra Hall's claims for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 or supplemental security income be **DISMISSED WITH**

**PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 17th day of August, 2023.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

[3] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.